MICHELE BECKWITH
Acting United States Attorney
KEVIN C. KHASIGIAN
Assistant U. S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone: (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>APPROXIMATELY 0.5 BITCOIN, AND<br><br>APPROXIMATELY 0.54235139 BITCOIN,<br><br>  Defendants. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

The United States of America, by and through its undersigned attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

**NATURE OF ACTION**

1. This is a civil action *in rem* to forfeit two amounts of a cryptocurrency known as Bitcoin, the Approximately 0.5 Bitcoin held in wallet address 3JQfvknce2fRyncBnZXrtXmk2WBcER64RZ, referred to herein as wallet address "3JQfvk" and Approximately 0.54235139 Bitcoin held in wallet address 3GLT2rWFVMmdS66DQfyuuYQ6sUqzNWMrWr, referred to herein as wallet address "3GLT2r" (collectively, the "defendant cryptocurrency").  The defendant cryptocurrency is forfeitable to the United States based on its involvement in violations of wire fraud.

1

2. The defendant cryptocurrency was seized by the U.S. Secret Service ("Secret Service" or "USSS") on or about December 11, 2024, pursuant to Federal seizure warrants. The defendant cryptocurrency is currently in the custody of the Secret Service.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This district is a proper venue pursuant to 28 U.S.C. § 1355 and 28 U.S.C. § 1395 because the acts or omissions giving rise to the forfeiture occurred in this district.

## FACTUAL ALLEGATIONS

### Cryptocurrency and Virtual Currency Exchanges

5. Virtual currencies are digital tokens of value circulated over the Internet as substitutes for traditional fiat currency. Virtual currencies are not issued by any government or bank like traditional fiat currencies, such as the U.S. Dollar, but are generated and controlled through computer software. Bitcoin ("BTC") is currently the most well-known virtual currency in use.

6. Virtual currency addresses are the specific virtual locations of the electronic accounts to which such currencies are sent and received. An address is analogous to a bank account number and is represented as a string of letters and numbers up to 40 characters long. Each virtual currency address is controlled using a unique corresponding private key, a cryptographic equivalent of a password, used to access the address. Users can operate multiple addresses at any given time, with the possibility of using a unique address for every transaction. Only the holder of an address's private key can authorize a transfer of virtual currency from that address to another address. Although the identity of an address owner is generally anonymous (unless the owner opts to make the information publicly available), analysis of the blockchain can often be used to identify the owner of a particular address. The analysis can also, in some instances, reveal additional addresses controlled by the same individual or entity.

7. Many virtual currencies publicly record all their transactions on what is known as a "blockchain." The blockchain is essentially a distributed public record or ledger, run by a decentralized

network, for a specific virtual currency. There are different blockchains for different types of virtual currencies. The blockchain for each virtual currency contains an immutable and historical record of every transaction executed utilizing that currency's blockchain technology, that is to say, it maintains a record of every transaction executed with a particular virtual currency. It also records the address of every virtual currency account that ever received that particular currency and maintains records of all the known balances of that currency for each virtual currency address. The blockchain can be updated multiple times per hour.

8. A virtual currency wallet is a software application that interfaces with the virtual currency's specific blockchain. The virtual currency wallet generates and stores a user's accounts' addresses and private keys. A virtual currency wallet also allows users to send and receive virtual currencies from their accounts. Multiple addresses can be stored in a wallet. Users' wallets can be either "custodial wallets" or "non-custodial wallets." Custodial wallets are managed by centralized businesses which retain an account holder's private keys and execute the transactions the user asks the host business to execute. Custodial wallets are also referred to as "hosted" wallets. Non-custodial wallets are managed by the account holder directly, retaining their own private keys and full control over the account. Non-custodial wallets are also referred to as "unhosted" wallets.

9. ChangeNow is a decentralized cryptocurrency exchange that receives cryptocurrency for the purpose of swapping, or converting, the funds into a different cryptocurrency. ChangeNow is part of CHN Group LLC, a company incorporated in Saint Vincent and the Grenadines, and is a non-custodial exchange.

**Vallejo Resident "the Victim" Defrauded of Bitcoin in Phishing Scheme**

10. On March 13, 2024, an individual referred to herein as "the Victim" contacted the United States Secret Service San Francisco Field Office to report they were defrauded out of hundreds of thousands of dollars in Bitcoin. The Victim is a resident of Vallejo, California, in the Eastern District of California, and, in March 2024, they held Bitcoin at cryptocurrency exchanges based in the United States, as well as cryptocurrency hardware storage devices.

11. The Victim told Secret Service agents and analysts that they received a phone call earlier

3

that day from an individual claiming to be an employee of a well-known Exchange 1 cryptocurrency exchange in the United States, referred to herein as "Exchange 1." This "Exchange 1 Employee," referred to herein as "Caller 1," told the Victim that Exchange 1 had identified fraudulent activity in the Victim's cryptocurrency account. Caller 1 told the Victim they would soon receive a text message "link" that, once pressed, would resolve the fraud. The link would be labeled "cancel transaction."

12. A short time after the Victim's call with Caller 1, the Victim received a second phone call, this one from an individual claiming to be an employee at a second cryptocurrency exchange in the United States, referred to herein as "Exchange 2." This individual, referred to herein as "Caller 2," similarly told the Victim that Exchange 2 had detected suspicious activity in the Victim's account at the exchange. Caller 2 explained that the Victim's Exchange 2 account was frozen and Caller 2 would rescue the Victim's account if the Victim "accepted a push notification" sent to their cellphone. Caller 2 said that accepting the "push notification" would verify the Victim's identity as the legitimate accountholder and a gateway to Exchange 2's tech help.

13. The Victim told Secret Service agents and analysts that they received a two-factor authentication prompt from Caller 2 and knew accepting the prompt gave Caller 2 access to their Exchange 2 accounts. At the time of the attack, the Victim's cryptocurrency wallets contained approximately $654,000 of Bitcoin.

14. The Victim was the target of a cybercrime known as "phishing," where attackers deceive someone to obtain sensitive information such as personal credentials or unauthorized access to cryptocurrency accounts. Most large cryptocurrency exchanges have "two-factor authentication," a security feature requiring the successful completion of two separate, distinct forms of identification—"factors"—to obtain account access. The first factor is a username and password; the second factor may be a "yes" or "no" prompt sent to an accountholder's smartphone, which authenticates the user's claim to the identity submitted in the first factor.

15. To evade this two-factor security feature, a corrupt actor will trick the victim into accepting a prompt on their smartphone, unintentionally giving the bad actor access to their account. In this instance, dishonest actors Caller 1 and Caller 2 posed as representatives from two of the largest cryptocurrency exchanges in the United States, gaining access to the Victim's cryptocurrency accounts

4

through impersonation.

16. After speaking to the Victim, Secret Service agents and analysts started to trace the $654,000 in Bitcoin transferred out of the Victim's cryptocurrency accounts. Relying on blockchain data, Secret Service agents and analysts learned that the Victim's accounts were breached between 9:07am and 9:47am (UTC) and someone transferred approximately 7.08614758 of the Victim's Bitcoin to a wallet address beginning in "bc1qst." Hours later, someone moved 3.54303941 Bitcoin from the "bc1qst" wallet to a wallet address beginning in "bc1qgn."

17. Using the Victim's stolen Bitcoin, the "bc1qgn" wallet initiated multiple transfers in 0.5 BTC increments to ChangeNow. A review of ChangeNow records revealed the crypto thieves were swapping out of Bitcoin and into Monero cryptocurrency ("XMR") to hide their crimes. XMR is what is known as a "privacy coin" and is, by design, meant to be untraceable. Crypto thieves often use XMR in cryptocurrency thefts because its anonymity makes it difficult to trace.

18. On March 14, 2024, the crypto thieves conducted two transactions involving the Victim's stolen Bitcoin. First, approximately 0.5 Bitcoin was transferred from the "bc1qgn" wallet to wallet address "3JQfvk." Second, approximately 0.542782417[1] Bitcoin was transferred from the "bc1qgn" wallet to wallet address "3GLT2r." ChangeNow, who was notified of the transfer of funds, immediately froze the Bitcoin and law enforcement followed with seizure warrants issued by the Honorable U.S. Magistrate Judge Jeremy D. Peterson, in the Eastern District of California.

**FIRST CLAIM FOR RELIEF**
**18 U.S.C. § 981(a)(1)(C)**

19. The above paragraphs are incorporated by reference as though fully set forth herein.

20. The United States alleges that the defendant cryptocurrency was derived from proceeds traceable to an offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), which incorporates the definition of "specified unlawful activity" found in 18 U.S.C. § 1961(1) and is therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C). Wire Fraud in

---

[1] 0.542782417 BTC was traced to wallet address 3GLT2r, however actual amount seized – and currently in US Government custody – is 0.54235139 BTC.

violation of 18 U.S.C. § 1343, constitutes "specified unlawful activity" as defined in § 1961(1).

### PRAYER FOR RELIEF

WHEREFORE, the United States prays that:

1. Process issue according to the procedures of this Court in cases of actions *in rem;*

2. Any person having an interest in said defendant cryptocurrency be given notice to file a claim and to answer the complaint;

3. The Court enter a judgment of forfeiture of the defendant cryptocurrency to the United States; and

4. The Court grant such other relief as may be proper.

DATED: 5/9/2025

MICHELE BECKWITH
Acting United States Attorney

By:  /s/ Kevin C. Khasigian
KEVIN C. KHASIGIAN
Assistant U.S. Attorney

**VERIFICATION**

I, Frank Nguyen, hereby verify and declare under penalty of perjury that I am a Special Agent with the U.S. Department of Homeland Security, United States Secret Service, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the United States Secret Service.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated:  05/09/2025

/s/ Frank Nguyen
FRANK NGUYEN
Special Agent
U.S. Department of Homeland Security
United States Secret Service

(Signature retained by attorney)